JUANITA ZALDUONDO DÍAZ, Plaintiff and Appellee, *v.* NICOLÁS
ITURREGUI ET AL., Defendants and Appellants.

No. 11917. Submitted February 29, 1960.—Decided June 12, 1961.

2

4

*Antonio J. Matta* for appellants. *Fiddler, González, Guillemard & Rodríguez* (*Fiddler, González & Nido* on the brief) for appellants. *Wilfrido Roberts* for appellee.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The principal question in this appeal is whether a pending action for legal redemption affected the subacquirer of the condominium object of the redemption.

Luis Zalduondo Veve died testate in the year 1954. As his heirs he left his seven children, Milagros, María, Carlota,

Berta, Diego, and Luis Zalduondo Cruz and Juanita Zalduondo Díaz. Among the properties of his inheritance there was a rural property of 252.90 cuerdas located in the ward Juan Martín of the Municipality of Luquillo. The property was recorded in the Registry of Property in the name of his seven children in equally undivided shares.

On June 3, 1955 the co-owner, Milagros Zalduondo Cruz sold to Nicolás Iturregui, married to Ana Margarida, her joint-ownership of one-seventh of the undivided share in said property for the price of $7,200. On June 10, 1955, that is, seven days after said sale, the co-owner Juanita Zalduondo Díaz, filed an action against the conjugal partnership Iturregui-Margarida, in the Superior Court, San Juan Part, for the redemption of said joint interest. With her complaint she deposited the amount of $7,200, which was the selling price of said parcel and, also, $100 "to cover the expenses of the contract and any other lawful payment made by the purchasers for the sale as well as to cover any necessary or useful expense made on the property sold." Among other allegations in her complaint she stated:

"In case that the sum of $100 were not sufficient to cover the aforesaid expenses, the plaintiff offers to pay the amount once it is known, and to that effect accompanies the present complaint with a bond to insure that she will deposit said amount."

On December 22, 1955 the action for redemption was still pending. The defendant spouses had not recorded their undivided interest in the registry, nor had the title been presented for its recording. On that day the spouses Iturregui-Margarida sold to Ramón Agudo Cano and his wife Raquel Baker the condominium object of the action for redemption which was pending.[1]

---

[1] On December 23, 1955 the co-owners María, Carlota, Berta, and Diego Zalduondo Cruz, sold their respective joint interests in the property to the spouses Ramón Agudo Cano and Raquel Baker and, on January 9, 1956 the same spouses bought from the co-owner Luis Zalduondo Cruz the joint

On January 26, 1956 the redeemer requested and obtained from the trial court the substitution of the spouses originally sued, Iturregui-Margarida, for the new acquirers pendente lite, of the undivided joint interest in litigation, the spouses Agudo-Baker as party defendants. On the same date, with the authorization of the court, she filed an amended complaint in which she reproduced the allegations of the original complaint, she alleged the second sale in favor of the new defendant spouses, she stated, that the latter, as well as the original defendants, were persons alien to the community and prayed that the sum of $7,200 be considered as deposited in favor of the spouses Agudo-Baker, and that they be ordered to issue in favor of the plaintiff a public deed transferring to her title of the undivided joint interest which had first been sold by Milagros Zalduondo Cruz to the spouses Iturregui-Margarida.[2]

---

interest owned by him. In relation to these two sales, Juanita Zalduondo Díaz filed, separately, in the same court, two other actions for legal redemption, directly against the spouses Agudo-Baker which were later consolidated for the purpose of their decision.

[2] The order authorizing the substitution of defendant parties says as follows:

"ORDER. In view of the preceding motion it is hereby granted and the spouses Nicolás Iturregui and Ana M. Iturregui are substituted as defendants by the spouses Rafael (sic) Agudo Cano and Raquel Baker.

"Summons be issued by the Office of the Clerk in the ordinary way to the new defendants."

The summons issued was directed to "Ramón Agudo Cano and Raquel Baker, substitute defendants." The first one was summoned as defendant "mentioned in said summons." However, neither in the caption of the amended complaint, nor in its allegations Agudo Cano nor Raquel Baker, or any one of them, appeared as defendants. The prayer requested "judgment granting the present complaint (the amended) and the defendants be ordered, or in their default, the Marshal, to execute the corresponding deed . . ." Said circumstances caused Agudo Cano to request and obtain permission to "intervene as defendant in this action, and be considered as such . . ." Thereafter the attorneys for the parties as well as the trial court considered Agudo and his wife Raquel Baker as the only defendants, although the former sometimes designated himself as "intervener." In this appeal they have appeared as the "defendants-appellants."

Agudo Cano answered the amended complaint. He admitted all the allegations in the first, second and third paragraphs of the amended complaint which read:

"1. By deed No. 58 of June 3, 1955 executed before the Notary . . ., Milagros Zalduondo Cruz sold to the defendant spouses all her title, right or share corresponding to her as heiress of Luis Zalduondo Veve, in a property of 252.90 cuerdas located in ward Juan Martín of Luquillo, Puerto Rico, and which is described as follows:

'RURAL: Parcel of land composed of 252.90 cuerdas located in Ward Juan Martín of Luquillo. Bounded on the north and east by Nicolás Iturregui; on the south, by the Land Authority and various parcel owners and on the west by the Hacienda Margarita.'

"2. Said sale was made for the price of $7,200.

"3. After this action was filed, and while it was pending, the original defendants, spouses Iturregui-Margarida sold to the spouses Ramón Agudo and Raquel Baker the share they had acquired as it has been stated in the first paragraph."

He did not deny—and therefore it should be considered as admitted, pursuant to the provisions of Rule 8(d) of Civil Procedure then in effect—that part of paragraph four which says "The plaintiff is and was co-owner of the described property."

In relation to the fifth and sixth and last paragraphs, he stated that as they were "questions of law" he had nothing to allege. Those two paragraphs state:

"5. The plaintiff wishes to recover the share sold to the defendants and to that effect she deposited in the Office of the Clerk of this court, the sum of $7,200, purchase price, at the disposition of the spouses Iturregui-Margarida and an additional sum of $100 to cover the rest of the expenses of the contract or any other lawful payment made by the buyers for the sale as well as for any other necessary or useful expense made on the property sold. In case that the sum of $100 is not sufficient to cover the aforesaid expenses, the plaintiff offers to pay the amount once it is known and to that effect jointly with

this complaint sends a bond to insure that she will pay said amount.

"6. The plaintiff binds herself not to sell the share redeemed within four years."

Agudo Cano only denied that part of paragraph 4 of the amended complaint which reads:

". . . and the original defendants as well as the spouses Agudo-Baker are strangers to the existing community of property."

His answer alleges as special defenses, in synthesis, that (a) the complaint had "fatally prescribed" in regards to him; (b) the action for redemption could not prosper because, at the time that the action was filed against him, he was not an stranger; and (c) that the plaintiff had not appeared before the court "with clean hands and as a matter of equity her action, untimely filed and in bad faith, should be flatly dismissed."

After said answer was filed, the plaintiff asked the trial court to render summary judgment in her favor. She based her motion on the "record of the case" and on a sworn statement of the plaintiff in which, among other things, she states:

"4. That neither the defendant spouses Nicolás Iturregui and Ana M. Iturregui, nor the likewise defendant spouses, Ramón Agudo Cano and Raquel Baker, are, nor have ever been heirs of Luis Zalduondo Veve; not having, therefore, now or at any time, any interest or share in the property object of the causes of action cited in the caption, except the right they acquired from the heirs Milagros, María, Diego, Carlota, Berta, and Luis Zalduondo Cruz."

As it may be noted, this sworn statement tended to confirm the only fact of the amended action denied by Agudo Cano, that is: that the spouses Iturregui-Margarida as well as the spouses Agudo-Baker were strangers to the community composed by the heirs of Luis Zalduondo Veve.

Agudo Cano opposed said motion thus:

"That the Intervener understands that said Motion for Summary Judgment does not lie as to the plaintiff and if it did lie it would be in favor of the Defendant Intervener, Ramón Agudo on the following ground:

"Because any cause of action or right that plaintiff might have had against the intervener has fatally prescribed."

The motion for summary judgment having been discussed and submitted for its decision, the trial court determined that it lay and rendered summary judgment for plaintiff which in its dispositive part reads as follows:

"The defendants will execute the corresponding deed in favor of the plaintiff, transferring to her the share which they acquired of the property described in the caption of the complaint, and which, as provided by our Civil Code, and lawful acts conducted by the plaintiff, was subject to the action for redemption.

"The price of acquisition, for the plaintiff, will be $7,200 plus the expenses of contract and any other legitimate payment incurred by the defendants for the sale, as per paragraph 4 of the complaint.

"The costs, attorney's fees for the amount of $600 are imposed on the defendants."

Agudo Cano appealed from this judgment and in his brief he states the following assignments of error:

"1. The trial court erred in admitting and maintaining the action for redemption by the appellee against Iturregui.

"2. The trial court erred in rendering summary judgment.

"3. The trial court erred in substituting the appellants as defendant parties and in rendering judgment against them.

"4. The trial court erred in ordering the substitution and amendments requested by the appellee, permitting that the suit be prosecuted exclusively against the appellants.

"5. The trial court erred in rendering judgment against the appellants, since they were third parties under the Mortgage Law or Civil Code."

In the first error the appellants maintain: (*a*) that the trial court should not have admitted the original complaint against Iturregui because plaintiff did not deposit with the complaint, besides the purchase price, the exact amount of "expenses of the contract," nor did she bind herself to pay "the useful and necessary expenses" incurred by the buyer; and (*b*) that said court lacked legal power to consider the complaint in the action of redemption as no "proceedings to avoid litigation" (*acto de conciliación*) were held as required by the Law of Civil Procedure for Cuba and Puerto Rico in its §§ 1619 and 1620, which should be considered in force. We must decide both matters against the defendants-appellants.

(*a*) The defendants-appellants, petitioners herein, invoke as grounds for their first contention, the provisions of subd. 2 of § 1616 of the former Law of Civil Procedure which went into effect in Puerto Rico on January 1, 1886 and which in its pertinent part says:

"Section 1616. In order that an action for redemption may be allowed it is necessary:

. . . . . . . . .

"2. That *the price, if known, be deposited,* and otherwise, that security be furnished to do so as soon as the price becomes known." (Italics ours.)

Said section clearly shows that the only amount which the redeeming co-owner is bound to deposit in order that his action for redemption be allowed is the price of the first sale which gave rise to the redemption, and none other. It is obvious that the requisite of the simultaneous and effective deposit of the purchase price with the filing of the action for redemption, or in the proper case, the deposit of a bond, is not extended in any way to the other additional sums which, as expressly provided in § 1407 of our Civil Code, the redeemer has the duty of "returning to the vendee" and which are: "The expenses of the contract and any other legitimate pay-

ment made by reason of the sale" and "the useful and necessary expenses incurred by the thing sold."[3]

As these expenses in addition to the price are ordinarily unknown to the redeemer, the moment for its refund or payment to the purchaser is not concurrent with the filing of the action. Its existence and amount should be alleged and proven by him and their payability and amount fixed by the court in its judgment.[4] The redeemer, if action is allowed, is bound, upon complying with the judgment granting the redemption, to previously pay all the expenses determined judicially or by the litigants by common agreement, in order to obtain the transfer of the title to the redeemed thing and the delivery of its possession.[5]

The deposit of the amount of $100 and the posting of a bond were unnecessary. Pursuant to § 1407, the amount of the expenses of the contract and the other payments and expenses are not part of the stipulated price, as the defendant-appellant states in his brief.

Neither was it necessary for the redeemer to bind herself in her complaint, to the refund of those expenses and ad-

---

[3] *González* v. *Acha et al.*, 21 P.R.R. 124, 125 (1914); *Martínez* v. *Pirallo*, 61 P.R.R. 87, 89 (1942); *Llambías* v. *Pagán*, 65 P.R.R. 424, 434 (1945); Judgments of the Supreme Court of Spain of July 13, 1945, and June 8 and November 13, 1954; X Manresa 358; XXIII Scævola 913; IV Castán 138, 8th ed.; II-2 Manuel de la Plaza, *"Derecho Procesal Civil Español"* 339 (3d ed.); III Borrell y Soler 359; Ramón Badenes Gasset, *"La Preferencia Adquisitiva en el Derecho Español"* 80, Bosch, Barcelona 1958.

[4] In his answer, Agudo Cano did not allege them. The judgment ordered that the plaintiff would pay, besides the price, "the expenses 'of the contracts' and any other lawful payment made by 'the defendants' for the sale." This pronouncement is not correct, because what the redeemer had to pay are the expenses of the first sale which gave rise to the redemption and the "expenses of the contract" are those made by the first purchaser, in this case, Iturregui.

[5] Our decision in *Fuertes* v. *Arzón*, 81 P.R.R. 479 (1959) in regards to requisite No. 3 which we point out at p. 484, is to be understood as modified in the sense that only the simultaneous deposit of the stipulated selling price, if known, is necessary and if unknown that a bond be given to insure payment after it is known.

ditional payments, since said obligation was legally pre-established. Notwithstanding this, the amended complaint, in its 4th paragraph, has a substantial offering to that respect and the judgment provides, in a certain sense, for its refund.

■■■■ (b) We could refuse to consider the merits of the alleged invalidity of the judgment appealed from on the basis of the absence of the proceedings to avoid litigation (*acto de conciliación*), because it is a new matter, not raised or discussed at any stage of the proceeding before the trial court. After having answered the complaint, opposed the motion for summary judgment, of having sought indirectly that a summary judgment be rendered in his favor, of raising several incidents in the case, after adverse judgment was rendered and an appeal taken, Agudo Cano raises it, for the first time, in his brief before this Court.

His insistence in considering it as a jurisdictional matter or lack of authority by the trial judge to render summary judgment, has prompted us to consider it.

Under the former Law of Civil Procedure, before filing a declaratory action, it was necessary to seek conciliation between the parties before a competent Municipal Judge, except in the suits which it expressly enumerated. The institution of the proceedings to a conciliation, regulated by § § 459 to 479 of said act, responded to the purpose of avoiding suits and to the desire of giving the litigants the rapid and economic contractual solution of issues susceptible of being decided by the courts and without the need of a public trial. Its origin resides in *Doce Tablas*, which contained a certain passage which provided that force of law be given to any agreement between the parties reached "on their way to the trial." It consisted, considered as a whole, of a conference granted by law, between the parties who were on the verge of a controversy for the purpose of letting them explain their respective claims and close with a friendly agreement.

or compromise, if they so wished; with this preliminary act it was possible to avoid the litigation.[6]

Section 460 provided:

"Proceedings to secure a conciliation shall not be necessary for the interposition of actions of *tanteo* or *retracto* (redemption), or any other action which is urgent and peremptory in its nature. But if litigation is to be resorted to, the proceedings to secure a conciliation shall be required or a certificate to the effect that a conciliation was attempted without effect."

The former act, in its §§ 1616 to 1628, regulated the proceedings for redemption. Sections 1619 and 1620 provided:

"Art. 1619. The judge shall admit the complaint and shall order the institution of proceedings for redemption, and the deposit in the public establishment provided for the purpose of the amount paid, or shall accept security therefor, under his liability, in a proper case, without prejudice to his right to alter or amend his orders during the pendency of the proceedings, after the presentation of the certificate of the proceedings. to avoid litigation.

"Art. 1620. After the presentation of the certificate of the proceedings to avoid the suit (*acto de conciliación*), by the plaintiff, the judge shall refer the complaint to the purchaser and shall order him to be summoned, delivering to said purchaser the copies of the complaint and of the documents in the manner prescribed for ordinary actions of greater import."

---

[6] For the steps to be taken in the proceedings to secure conciliation and its effects, see §§ 459 to 479 of the former Law of Civil Procedure of 1886.

Despite the persistent criticisms of illustrious textwriters—see, II-2 Jaime Guasp, "*Comentarios a la Ley de Enjuiciamiento Civil*" 11–12—the Spanish law for proceedings keeps its original section numbers for the proceedings to avoid litigation. From I Casso and Cervera, *Diccionario de Derecho Privado* 166, we quote:

"The history of conciliation is the history of a great illusion that has vanished. . . . . Practice shows that the individuals seek the conciliation of their claims through other means, without resorting to a judicial authority until after those have failed, and when they are determined to exhaust every judicial action."

From the three sections quoted above, it clearly appears that proceedings to secure conciliation were not necessary prior to seeking the redemption although its ulterior course be subordinated to the compliance with said formality.

When General Order No. 118, Series of 1899, approved August 10, 1899 went into effect, it was provided in its § 9 that civil justice and civil procedures of all classes will be administered "under the forms and procedure established further on in this general order." Notwithstanding the fact that several procedural matters regulated by the former Law of Civil Procedure were declared to remain in force, said General Order did not authorize the continuation of the effectiveness of the conciliation proceedings as an indispensable prerequisite to litigate before the courts created thereby.[7] Our Code of Civil Procedure of 1904 did not authorize them either. And much less our rules of civil practice of 1943 and 1958.

In *Burgos* v. *Báez*, 17 P.R.R. 599, 602 (1911), we said on this point:

"On April 18, 1901, the date on which it is alleged that the proceedings for conciliation were held, General Order No. 118, series of 1899, which had fundamentally changed the civil procedure in Porto Rico, was already in force. The preliminary proceedings for conciliation became unnecessary for the institution of civil actions, and the provisions of the old Law of Civil Procedure upon the subject were virtually repealed.

"Such being the case, the proceedings for conciliation alleged to have been held in this case have no legal importance as such, and it is unnecessary to find out whether or not the same were held in accordance with all the requirements of the law. . . ."

It is true that in subsequent decisions we have declared valid in Puerto Rico several provisions of the former Law of

---

[7] See §§ 47 to 64 of said General Order, which regulated, in speedy, simple, intelligible and precise manner, the proceeding in a civil action from the filing of the complaint to its final adjudication, including the rules for the presentation and admission of evidence. Comp. Stat. 1941, at 11–12.

Civil Procedure referring to actions for redemption, particularly those sections which establish the prerequisites or conditions precedent for attempting such action.[8] But we have done so on the principle that they are really substantive provisions, essential or fundamental to the right of redemption which has long been recognized by our Civil Code, such as those which require the filing of the complaint within nine days, the deposit of the selling price and the promise of the co-owner not to sell for four years, contained, respectively, in paragraphs 1, 2 and 5 of § 1616 of said adjective law.

Since 1899 no civil procedural system adopted or created in Puerto Rico has revived the conciliation proceedings as a prerequisite to the filing of all classes of suits. We could say, however, that the only analogous precedent established by our Legislature is the "preliminary hearing or act of conciliation," in certain divorce actions when there are minor children, provided by Act No. 118 approved May 7, 1942, and which amended § 97 of our Civil Code. Perhaps also there might be a similarity, because of their purpose, between the old acts of conciliation and those effected in relation to the industrial and agricultural controversies between employees and employers by the mediation and conciliation services or commissions created by Acts No. 36 of June 3, 1919, No. 15 of April 14, 1931 and No. 144 of May 13, 1943.

■ Ordinarily, no notice need be given here to the defendant before filing a suit against him. The filing of the complaint is sufficient notice if it were necessary.[9]

In *González* v. *Godreau et al.*, 21 P.R.R. 147 (1914), the appellee alleged that the action for legal redemption in joint-

---

[8] *González* v. *Acha et al.*, 21 P.R.R. 124 (1914); *González* v. *Godreau et al.*, 21 P.R.R. 147 (1914); *Benítez* v. *Díaz*, 28 P.R.R. 628, 631 (1920); *Vellón* v. *Central Pasto Viejo*, 34 P.R.R. 226 (1925); *Central Pasto Viejo* v. *Roig et al.*, 36 P.R.R. 371 (1927); *Vellón* v. *Central Pasto Viejo*, 37 P.R.R. 531 (1927); *Martínez* v. *Pirallo*, 61 P.R.R. 87 (1942); *Llambías* v. *Pagán*, 65 P.R.R. 424 (1945); *Noble* v. *Rodríguez*, 69 P.R.R. 447 (1949); *Quiñones* v. *Alcaide*, 72 P.R.R. 670 (1951).

[9] *Hau* v. *Irizarry*, 50 P.R.R. 353 (1936).

ownership did not state facts sufficient to constitute a cause of action "because, as it is necessary that every complaint should allege the existence of a right and its infringement by the defendant in order that the court may grant the proper remedy, it should have been alleged that the plaintiff tendered to the defendants the purchase price and the other expenses referred to in section 1421 [now 1407] of the Civil Code within the nine days allowed by the statute for the redemption and that the defendants refused to accept the same." As to this contention we said at p. 149:

"In regard to the first point, we will say that the statute contains no provision requiring the joint-owner who seeks to redeem the property sold to tender to the purchaser the purchase price and the other expenses referred to in the code in order to bring an action to enforce his right of redemption. The right to redeem the joint-interest sold to a third person does not arise because the vendee may have refused to accept the tender of the purchase price to him by the redeemer but from the fact that the sale was made to a third person. To accept the theory of the respondents, the right to bring an action for legal redemption would arise when the purchaser refused to receive the purchase price and not, as provided in section 1427 of the Civil Code, from the time when the sale was recorded in the registry of property, or, if not recorded, from the time the redeemer may have had knowledge of the sale. On the other hand, the time allowed by the statute for exercising the right of redemption is so short that it would not be possible in many instances to locate the purchaser for the purpose of tendering him the purchase price and to bring the action within nine days. Such allegation, then, is not necessary and consequently the fact that it is not made does not render the complaint demurrable."

If thereafter we have considered unnecessary any extrajudicial procedure prior to the filing of the complaint for the correct exercise of the right of legal redemption of joint-ownership, we must reject with more reason the idea of re-establishing as a condition precedent to this right or to the

validity of the procedures in the action, the prerequisite of the extinguished conciliation act.[10] On the other hand, and even admitting the validity of the act of conciliation, the defendants have not shown: that they have suffered prejudice because of the omission thereof nor the reason for not requesting it in the trial court. We doubt that in a case like the present one and the other two instituted by reason of the other two sales of joint-ownerships in favor of Agudo Cano, in which the parties have behaved with quite some resentment and unusual vehemence, and have even accused plaintiff of acting in bad faith and of not coming to the court with clean hands, the holding of the conciliation act would have been of any practical use or even an attempt to a friendly agreement in the course of a pretrial conference.

## II

It is alleged in the second assignment that the trial court erred in rendering summary judgment because: (a) Neither Rule 56 nor any of the other Rules of Civil Procedure is applicable to the action for redemption but only the Law of Civil Procedure of 1881 (sic) in that part relating to the redemptions; (b) if they are applicable, there was a con-

---

[10] The redeemer states in her brief that the "pretrial conference substitutes the referred conciliation act." In a certain sense perhaps we may find some reason in her statement. But the pretrial conference authorized first by Rule 16 of the Rules of Civil Procedure of 1943 and later by Rule 37 of the present Rules of Civil Procedure of 1958, differs in many substantial aspects from the conciliation act of the former Law of Civil Procedure: (1) the act of conciliation was held prior to the ordinary suit which was avoided in case of an agreement, the present pretrial conference is held after the suit is commenced and the issue is set; (2) the former was compulsory and its omission entailed the denial of the action, the latter is held at the court's discretion; (3) the parties appeared at the conciliation act "each one accompanied by an *hombre bueno";* the pretrial conference is generally held with appearance of the attorneys; (4) the judge who intervened in the act was the municipal judge, who once it was held or attempted did not intervene afterwards in the declaratory action; the judge who intervenes in the conference is one from the same court in which the action is prosecuted and later may intervene in the rest of the proceedings and even decide it on its merits; (5) the act had the effect of interrupting the prescription of the action,

troversy as to appellee's offer not to sell the redeemed undivided interest for four years, which should have been supported by the presentation of the corresponding evidence; and (c) the defense of estoppel raised another controversy which did not permit that judgment be rendered. The three grounds lack merit.

The Rules of Civil Procedure of 1943, in force when the action for redemption was commenced and decided, provide in Rules 1, 2, 81 and 86, insofar as pertinent, as follows:

"Rule 1. Scope of Rules

These rules *govern the procedure* in the courts of justice of Puerto Rico *in all suits of a civil nature,* as provided in Rule 81. . . ."

"Rule 2. One form of action

There shall be one form of action to be known as 'civil action'."

"Rule 81. Applicability in general

(a) To What Proceedings Applicable. These rules *shall be applicable to all ordinary civil actions* and to all proceedings for mandamus, injunction, interdict for the retention or recovery of the possession of real property, intervention (*tercería*), and enforcement of homestead claims."

---

the conference has no such effects, because it is held once the action is judicially started; (6) to attempt the act the interested party had to appear before the Municipal Judge and present a copy of the "complaint" signed by him stating the names, professions and domicile of the parties and his claim; the conference does not require such formality, it is sufficient that the issue be stated so that the court may order it if he believes it necessary; (7) the sole and fundamental purpose of the act of conciliation is to obtain a friendly agreement between the potential litigants, outside the ambit of a declaratory action; the purpose of the conference is multiple: to simplify matters in litigation, to amend pleadings, admissions of fact and of documents, identity of witnesses, limitation of experts, appointment of a master to determine the findings of fact and, finally, to consider "such other matters as may aid in the disposition of the action" among which may be considered of course, a possible compromise of the litigation or the consent of one of the parties or both to abandon the same or that a judgment be rendered in a specific manner.

The only proceeding permitted before the trial by Rule 27 of 1943 and its concomitant Rule 24.1 of 1958, is the perpetuation of testimonies to use them as evidence under certain conditions. *Cf. In re People v. United Theatres, Inc.,* 76 P.R.R. 397, 398 (1954).

"Rule 86. Effective date

These rules will take effect on September 1, 1943. *They govern all proceedings in actions brought after they take effect. . . ."* (Emphasis added.)

The action for redemption being in Puerto Rico an ordinary civil action, it is clear that its prosecution had to be governed by the proceeding specified by these rules and by our Code of Civil Procedure of 1904 in all that was not contrary thereto. We decided in *Rivera* v. *District Court*, 68 P.R.R. 625, 628 (1948) :

". . . The adjective law, or more specifically, the Code of Civil Procedure and the Rules of Civil Procedure, when applicable, have the force of law and those who resort to the courts to seek a relief are bound to follow them while they are in force."

By provision of the act which vested power in this Court to "regulate judicial proceedings in all the courts of Puerto Rico for the purpose of simplifying them and promoting the prompt administration of justice"—Act No. 9 of April 5, 1941—such rules would not repeal, enlarge or modify the substantive rights of the litigants. Thus remained in effect the former Law of Civil Procedure provisions *whose substantive character* we had recognized, among others, some of the prerequisites required by its § 1616 to allow the actions for redemption. One of the grounds being that the redemption, because of its priviledged nature, limiting the power of the purchaser to dispose of the property and which sometimes is considered as an institution disturbing the right of contracting freely, is not an absolute right which can be separated from its exercise, but that, on the contrary, is subordinated to the latter, causing its effectiveness to depend on the special circumstance that it may be claimed properly and upon compliance with the essential conditions of the right of redemption, among which we find, *because of its substantive nature* those required by said § 1616 in its paragraph 1st

—filing the action within nine days— [11] 2d—deposit the price and 5th—compromise not to sell for four years. The procedural requirements contained in the 3d, 4th and 7th paragraphs of said section have not been recognized by us to be in effect. On the contrary, we have expressly decided that the 3d and 4th paragraphs are not in effect because they are procedural requirements in conflict with our adjective laws.[12]

When our legislative bodies have wished to preserve the old juridical institutions of a procedural nature, they have done so specifically, either by following the old text or by adopting it in substance. They did so, among others, with the unlawful detainer proceeding, with the so-called Special Legal Proceedings Act in matters of voluntary jurisdiction and with the injunctions for possession to recover or retain the possession of a real property. Said bodies have not so acted with the special proceedings for redemption contained in Title XIX—§§ 1616 to 1628—of the former Law of Civil Procedure nor with its other provisions purely procedural. Nor has this Court in the exercise of its powers to adopt rules of procedure done so. The tendency of our rulings in our recent decisions has been towards a uniform procedure whenever possible, in all contentious civil actions. *Cf. Andino* v. *Fajardo Sugar Co.*, 82 P.R.R. 81 (1961).

We should, therefore decide, and we so decide, that Rule 56 of the Rules of Civil Procedure of 1943, as well as all said rules, were applicable to the action for legal redemption filed on June 10, 1955 by the redeemer.[13]

---

[11] But not "counted from the date of the execution of the deed," as the only starting point which is provided by said section, but "counted from the entry in the registry, and in the absence thereof, from the time the redeemer may have had knowledge of the sale," as provided in § 1414 of our Civil Code.

[12] *Benítez* v. *Díaz, supra* at 630, in regards to 3d paragraph; *Noble* v. *Rodríguez, supra* at 454, in regards to 4th paragraph because it refers to a kind of redemption, among members of a family, not recognized by our Civil Code.

[13] Of course, those conditions which must be necessarily and strictly complied with in order that the action for redemption be allowed and

Appellant herein argues that the promise not to sell for four years stated in the complaint created a controversy by itself because it should have been implemented by the appellee "by her formal consent in court." Again we disagree on this point.

In her original as well as in the amended complaint the redeemer stated:

"6. The plaintiff binds herself not to sell the redeemed share for four years."

In her testimony which she attached or offered with her motion for summary judgment, she stated under oath that "she reproduces by reference and makes part of the present testimony all and every one of the allegations included in the three actions of the above-captioned cases."

In his answer Agudo Cano did not allege anything contrary to the obligation assumed by the plaintiff in her complaints "not to sell the redeemed share for four years." He simply stated that he had nothing to allege in regards to that promise because it constituted a conclusion of law. In his opposition to the motion for summary judgment he did not allege that it did not lie because said promise created a controversy which had to be implemented by evidence, as he now does, in his brief before us.

All that the 5th paragraph of § 1616 requires is:

"That the cotenant bind himself not to sell his interest in the property he redeems for four years."

Redemption should not be exercised for speculative purposes. One of its purposes is to eliminate common ownership, which as Escriche says in his Dictionary, "is usually a perennial source of discord." As means to avoid speculation, the redeemer, prior to 1855, was requested an oath to the effect that he wanted the property for himself and it was not

which until now we have recognized as being in force, remain unaltered and must be complied with in conformity with our previous decisions.

redeemed for speculative purposes. That measure and others were incorporated to the former law of procedural to insure the compliance with the restriction against transfer for those four years. Following previous decisions we decided in *Noble* v. *Rodríguez, supra* at 456–57, that the complaint must allege that the redeemer binds himself not to sell.[14]

The appellant did not attack the promise on the ground that it was false or deceitful or because there existed an speculative purpose. We repeat, he merely stated that he had nothing to say against it because it was a conclusion of law. As we understand what constitutes a conclusion of law, we cannot accept that the simple declaration of a promise not to sell may be considered thus. That position of the defendant did not create controversy in regards to the promise not to sell contained in the complaints. On the other hand, if the assumption of that obligation is a substantive requirement necessary in that action, the manner in which the same was contracted is correct. Under the circumstances of the case at bar we see no need of implementing in court, an obligation already duly contracted. It is true that the judgment made no provision in that regard. But that does not preclude us from modifying it properly.

■■■ We find no merit in the appellant's allegation about the ineffectiveness of the deposit of the price on the basis of the possibility that the redeemer may withdraw the amount thus deposited. Once the price is deposited it may not be withdrawn from the court unless the redeemer runs the risk of having his action dismissed. It can not be withdrawn,

---

[14] In the *Noble* case the complaint did not allege that plaintiff bound himself not to sell. We granted an opportunity to the redeemer to "amend his complaint on remand to include the missing allegation," retroactively to the date of the original complaint, when the case was remanded to the trial court.

In the case at bar the redeemer twice bound herself not to sell and she still went further: she conformed it to the former proceeding of 1855 by bringing it to the suit under the solemnity of an oath.

without giving the other party in whose favor it has been deposited, an opportunity to be heard.

Neither did the alleged defense of estoppel create a controversy in regards to the action for redemption. In the first place, the facts upon which said defense rests took place after the action was filed; in the second place, those facts are not related to the undivided interest object of the redemption action, but they refer to the alleged "conversations" that Agudo Cano had "with the plaintiff to acquire by purchase the *undivided interest . . . she has in the property*"; in the third place, the acts performed by Juan R. Zalduondo Grier are not acts of plaintiff herself; nor was it alleged that she knew them nor that she made the defendant believe in the veracity thereof.

### III

In their third assignment the appellants maintain that the trial court erred in substituting the appellants as defendant party and in rendering judgment against them because (*a*) the complaint against Iturregui did not state facts constituting a cause of action, and (*b*) because said complaint had lost all effectiveness at the time of the substitution of the defendants and said substitution was made untimely.

The original complaint is sufficient at law. Pursuant to our well-settled case law all the circumstances and facts necessary for the action for legal redemption were alleged.[15] It was filed on the seventh day counted from the first sale and the total deposit of the selling price was made that same day.

Although the plaintiff did not act with the due diligence in the proceeding in failing to summon promptly the original defendant, the truth is that the action did not lose its effectiveness on that account, as the appellant alleges.

---

[15] See *Fuertes* v. *Arzón*, 81 P.R.R. 479, 483 (1959) and the cases therein cited.

Its prosecution was always pending,[16] and appellant himself accepted, as we already stated, that it was pending when he purchased from Iturregui.

Whether it was an amended or a supplemental complaint, the truth is that a new cause of action was not exercised therein, but the same and original cause of action in which, and because of the second sale to Agudo Cano, the court ordered that the original defendant be substituted by the new acquirer. The sale which gave rise to the exercise of the right for redemption was the first and not the second sale. The action having been exercised within the period of nine days, the law does not require that successive purchasers be joined as defendant parties within a new period of nine days counted from the date of each subsequent transfer.

Whether the action had lost its effectiveness, whether the substitution was correctly or incorrectly made or whether instead of an amended complaint a complementary or supplementary complaint should have been filed, are circumstances which, because of the action of Agudo Cano himself, ceased to have importance, if they ever had any. Notwithstanding the trial court's order naming him and his wife as the only defendant parties in substitution of the original ones, he requested the court that he be permitted to intervene, alleging among other things and praying as follows:

"4. *That your petitioner is at present owner of the joint interest which the defendant Nicolás Iturregui had in said property* and therefore any judgment rendered in the case may affect him adversely in regards to the title over the joint interests object of the redemption in this case.

"5. That your Intervener has a good and just defense in its merits in the main action since inasmuch as it refers to him it has fatally prescribed.

"WHEREFORE the Hon. Court is prayed to authorize your petitioner to intervene *as a defendant in this action* and be con-

---

[16] Section 348 of the Code of Civil Procedure; *Torres* v. *Cabrera*, 73 P.R.R. 709, 710 (1952) ; *Lawton* v. *Rodríguez*, 38 P.R.R. 34, 42 (1928).

sidered as such, and be permitted to file the allegations which are attached to this motion." (Emphasis added.)

Leave to intervene as a defendant was granted and as such he filed his answer to the amended action. The only thing he did not admit in the same, as we said before, was the condition of stranger by Iturregui at the time he bought from him, that is, on December 22, 1955.

The extinctive prescription which the appellant invoked can not prosper or constitute an estoppel to the summary judgment because said defense is based on a false premise. As it is stated, when by judicial order rendered in the action for redemption he substituted Iturregui as the defendant and an amended action was filed by reason of the sale pendente lite in his favor, a new action for redemption was commenced against him, and since at that time there had elapsed "50 days after the Iturregui-Agudo sale, 43 days after the presentation by Agudo of his title, and 14 days after its final registration . . . the procedural efforts of the appellee tending to establish a new complaint, the same would be fatally defective as it was filed out of time."

The appellant forgets that legal redemption is given in favor of a co-owner against a stranger who has bought from another co-owner, but not in relation to subsequent sales executed between strangers and that pursuant to § 421(2) of the Code of Civil Procedure, the judgment is "in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action." And he was not only an assignee or purchaser pendente lite, but he was the defendant against whom the action was actually litigated. It was not a new and different action of legal redemption; it was the same one already commenced which was properly continued, within the nine days counted from the date of the first sale by Milagros Zalduondo Cruz to Nicolás Iturregui.

## IV

 The trial court did not err in allowing that the suit be maintained against Agudo Cano and his wife, eliminating Iturregui from the same.

While the main action was pending, the assignment of the interest that Iturregui held in the joint interest redeemed, took place. Said transfer pendente lite did not extinguish, terminate or cause the abatement of the action. It continued or subsisted notwithstanding the new change of title holder, invoking a right granted by law and timely exercised. The claim to the undivided share did not vanish at the moment of the second sale. Under the provisions in force at that time of § 69 of the Code of Civil Procedure and Rule 25 (c) of 1943[17] and our decisions in *Rivera* v. *Central Pasto Viejo, Inc.*, 44 P.R.R. 504, 506 (1933); *Pérez* v. *Díaz*, 41 P.R.R. 730, 731 (1931) and *Arrache et al.* v. *Carlsson*, 33 P.R.R. 243, 245 (1924), the redeemer could choose to continue it against Iturregui, bringing Agudo Cano into the trial to be heard, of course, or to ask that the former be substituted for all purposes by the latter. With the court's leave she chose the substitution.

By reason of that substitution the original defendant was eliminated from the suit. If Agudo Cano chose by his own will to occupy Iturregui's place, and, as he stated in his petition for intervention, *"is at present the owner* of the joint

---

[17] Insofar as applicable § 69 says:

"Section 69.—An action or proceeding does not abate . . . by the transfer of any interest therein, if the cause of action or proceeding survive or continue. . . . In case of any other transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."

Rule 25 (c) of 1943—incorporated into the Rules of 1958 as Rule 22.3 with slight changes in the language—says:

*"Transfer of Interest.*—In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the persons to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (*a*) of this rule."

interests which the defendant Nicolás Iturregui *had* in said property," he having lost any immediate or mediate relation with the thing sold to such a degree that his power as owner over said joint interest are absolutely and definitively exhausted; if because of said unconditional transfer "The vendee substitutes the vendor in all his rights and actions," as § 1400 of our Civil Code prescribes, and if the purpose of the redemption is no other than the granting of the title in favor of the prevailing redeemer and the material delivery of the possession of the joint interest, object of the same, which he now enjoys, we see no reason for keeping Iturregui, who can no longer transfer a title which he does not have nor deliver a possession of a right which he does not enjoy, as a necessary party in the action for redemption. The trial court was in a position to reach a complete solution to the controversy without Iturregui's presence and the judgment may be duly executed without his intervention.

It is true that the Supreme Court of Spain has decided in Judgments of October 11, 1905 and June 8, 1906 that the action should be directed against the original buyer and against the subsequent one. However, in its Judgment of April 28, 1953, among other things, it held:

"(3) If the first purchaser should alienate the property object of the redemption before the latter has taken place, he has lost the property and lacks status and right to transfer it to the redeemer claiming it, without being able to divest the new purchaser of his title without being heard and defeated at trial. (4) The purpose of the redemption, as the real action it is, consists in obtaining the ownership of the property enjoyed wherever it may be, so that the last acquirer, in case of successive ones, be bound to execute the deed of subrogation required by the redemption. (5) The nature of the legal redemption and the purpose of social interest for which it was instituted, do not permit that the exercise of the action which accrues be satisfied in any other manner than by the actual delivery of the thing redeemed." Judgment of the Supreme Court of Spain of

April 28, 1953; 42 *Revista General de Legislación y Jurisprudencia* 777 (1953)."

If the sale to Agudo Cano had not been absolute and unconditional, as for example, if Iturregui had only transferred the beneficial ownership retaining the legal ownership or any other power or right of disposition or guarantee, Iturregui, would have clearly remained connected with the redeemed thing and his elimination from the suit could not have been decreed.[18]

The appellant does not show that by Iturregui's elimination he was caused any prejudice, nor that the trial court committed an injustice. Upon demurring to the motion for summary judgment he did not allege that Iturregui's presence at the trial was necessary in order that it be decided. The fourth error assigned was not committed.

---

[18] The late Spanish jurist Narciso Riaza in his often cited work *"Los Retractos, Errores Dominantes Acerca de la Materia* 292–294, Reus Ed. 1919, says:

"As a corollary to such general doctrines a theory is laid down by virtue of which the legal redemption action is directed against the first purchaser, who executes the deed of sale to the redeemer.

"I can not conceive the source of this, because if I were told that the Civil Code seems to refer to a first sale, which reference I can not find, I would answer that there is no provision in the Code, at least I know of none, which foresees the case of subsequent sales to the one which gives rise to the right of redemption, nor does it mention rescissions of successive contracts if several are executed.

"I find that from the fact of a sale there arises a real right, which constituted in regards to the object as if it were categorical imperative, it may be exercised against anybody who possesses the thing, which right *a priori* has no concrete or specific subject in the obligation other than he who is the present possessor; the present possessor being the one who ultimately is interested in the action filed. The former and new acquirers of the thing have become subsequent and successive vendors who are, in respect to the object, in the identical situation of the first vendor as declared by Mucius Scaevola; that *they do not care* whether or not the redeemer substitutes the last purchaser, because they were not imposed a specific condition and because once each of the new sales is made, each new purchaser holds no right. I find that the actions directed to redeem properties should be filed and directed against the present owners, who are the only ones who can give effectiveness to our declared right. Then,

## V

 Did Agudo Cano acquire the condition of third-party mortgagee? This is the most serious question presented in this appeal. If he acquired it in conformity to the attendant circumstances of fact, and to our mortgage law applicable, the redemption commenced on June 10, 1955 does not affect him and the judgment rendered should be reversed. Otherwise we must uphold it.

Let us return to the facts. One June 3, 1955 the property belonging to the seven Zalduondo Cruz and Zalduondo Díaz brothers and sisters appeared recorded in their names, in equal undivided shares, in the Registry of Property and by hereditary title. On said date, the co-owner, Milagros Zalduondo Cruz sold her joint interest of one seventh to Nicolás Iturregui and his wife Ana Margarida. On June 10, 1955 the co-owner Juanita Zalduondo Díaz files an action for legal redemption against the spouses Iturregui-Margarida. On

---

if when we are going to exercise a subrogation we see the thing in the hands of a specific person, who not even in his capacity of a third party can present any obstacle, as we shall later see; why should we worry about six or six hundred previous sales which were executed after the birth of the right? If in the long run we shall not undo any of the relations created, but rather all of them will remain intact, *even the last one* in which the subrogation, the substitution, the incustration of the redeemer, will be verified on the last buyer why then mention that all the chain of sales must be undone and come to the first acquirer to obtain his consent to the subrogation, if he should never have reason to object, because he has no right to allege against it, no prejudice may be caused to him, *nor does he care* at all and absolutely about the right sought to be enforced?

"It will be said that it is necessary to rescind the subsequent sales to come to the first one, because the Code provides that the legal redemption is the right to subrogate in place of he *who acquires a thing* and the one who acquires the thing subject to redemption is the first purchaser, *in whose place precisely*, is where the law wishes the subrogation to take place. This statement is contradicted by saying: 1. That the purpose pursued by the law with the institution is the main thing, the fundamental and the same purpose is attained by subrogating in the place of the first one as of the last one. 2. That the same reason exist for the Code to provide that *always, in every case, the* subrogated be the first acquirer, as for it to be maintained that the provisions of § 1.521 apply in the

December 22, 1955, while the action for legal redemption was pending and without title of purchase of the joint interest granted in favor of the spouses Iturregui-Margarida having been recorded in the Registry (nor had it been presented for registration), these defendant-spouses sold to Ramón Agudo Cano and his wife Raquel Baker, the joint interest object of the action. Agudo Cano presents the title held by Iturregui, his predecessor at law, for registration, and also that of the new sale in his favor, on December 29, 1955, that is, seven days after the second sale. On January 26, 1956 the plaintiff requests and the court so orders, that the original defendants be substituted as such defendants by the subacquirers, the spouses Agudo-Baker. On the following day, January 27, 1956, the first sale to Iturregui as well as the second sale by him to Agudo Cano are recorded in the registry.

Let us turn now to the applicable law. Among the causes for the annulment of the sale is the legal redemption.—Section

event that the redemption takes place when only one sale has been made, in which the power of subrogation arises, and I am inclined rather to believe that the Code did not foresee the case where the thing would be too far from the first acquirer when the redemption is sought to be made. 3. That in the event of several subsequent sales, if it were *necessary* to take the thing to the first buyer, there would arise many, but very many cases in which that kind of redemption could not be made if we had to do it through an actual rescission for each subsequent sale made, in all of which cases it would be impossible if several or only one of the persons who acquired the thing and in turn transferred it would be unable to return the price to its purchaser, in which case, not problematic, but very possible, there would be no way to rescind his contract and, yet, it would be unquestionable that the redeemer's claim would be accepted. 4. That the right stated in § 1.521 is a *real right* and, therefore, pursues the property wherever it is located and then where he finds it he takes it. 5. That by the same token, as the Supreme Court has repeatedly held, the contingencies subsequent to the fact of the first sale, source of the right of redemption, can not affect the redeemer if he asks for the declaration of his power in due time and in the proper manner. 6. That there is no provision which prohibits the first purchaser from selling what he acquired whenever and however he sees fit, for the title acquired has no limitation, neither voluntary nor legal. 7. That prejudice may be caused to the first purchaser, if, failing to possess the thing, he is obliged to take the price of the first contract. And 8. That there is no provision for the rescission of previous contracts."

1395 of the Civil Code.[19] This is the right to be subrogated, with the same conditions stipulated in the contract, in the place of the person who acquires a thing by purchase or in payment of a debt.—Section 1411 *id.*—The right of subrogation, or of preference or acquisitive priority is granted to the co-owner of a common thing when the share belonging to the rest of the co-owners or to one of them is sold to a stranger. —Section 1413.

With respect to legal redemption our Civil Code contains no provision in case of successive sales, it provides for the case when only one act of alienation of ownership has taken place. However, in regards to the conventional redemption it provides in its § 1399, that the action may be brought "against every possessor whose right arises from that of the vendee, even though in the second contract no mention should have been made of the conventional redemption; without prejudice to the provisions of the Mortgage Law with regard to third persons."

Our Mortgage Law in its §§ 36 and 38 insofar as pertinent, provides:

---

[19] Because it is provided by our constituted, legislated and positive Law, we must accept the legal redemption as resolutory cause of the sale. But on the constituent and abstract field, properly and in its genuine sense, it is a right of subrogation or of priority which is far from causing a true resolution of the sale that gives rise to the right of redemption. That sale, once the action for redemption is won, is not juridically cancelled or destroyed nor do the things return to their primitive state. What then occurs is a simple change of the subject acquirer, for what the plaintiff claims in the suit for redemption is his place as purchaser, he is the true purchaser by legal provision and not he who appears in the contract. Like salt in water, the personality of the contractual purchaser is dissolved when the redemption is decreed. The place of the stranger who bought is taken by the victorious redeemer. The contract which gave rise to the action remains unaltered.

Naturally, the same may not be said in regards to a conventional redemption for in said case we have an actual resolutory condition coupled to a sale contract, by virtue of which, at the time of its performance the sale is rescinded and the things return between vendor and purchaser, to its primitive state.

"Article 36.—Rescissory and resolutory actions shall not lie against third persons who have recorded the deeds of their respective interests in accordance with the provisions of this law.

"Article 38.—As a consequence of the provisions of article 36, no instrument or contract shall be annulled or rescinded to the prejudice of a third person who shall have recorded his interest, for any of the following causes:

"1. . . . . . . .

"2. On account of legal redemption (*retracto*) in a sale or the right to acquire for the amount bid in emphyteusis."

Muñoz Morales, commenting the effects of the action for redemption in regards to third persons, states the following in I *Lecciones de Derecho Hipotecario* 248:

"As it may be noted in the text of the cited articles (§§ 1020, redemption by coheirs; 1412, redemption by co-owners; 1413, redemption by adjoining owners; and 1529 and 1530, right to pre-emption and redemption in the emphyteusis), these are conditions or better still, legal remedies which are not explicitly stated in the Registry; and in this particular, Morell says, referring to donations where the legal criterion in these and other cases is always the same, that it is not sufficient that a specific section of a statute grants the right to rescind, or resolve or revoke; whether the action of the law or of the will is exercised, it does not prejudice third parties, if the cause is not explicitly stated in the Registry and in its timely registration." [20]

---

[20] The old Spanish Mortgage Law of 1861, the subsequent one of 1869 and that of 1878 which was in effect here since 1880, stated in their texts the same criterion as to the effects of the rescissory and resolutory actions in regards to third persons. But the Spanish law of 1909, and that of 1944 in its § 37, provide on the contrary that the actions for legal redemption, "in the cases and terms established by the Laws," shall be granted against a third person who has recorded the titles of his respective rights.

Pursuant to this modern criterion it is stated in Decision of October 29, 1946, of the General Directorate of Registries (16 *Jur. Civ.* 229, 2d series):

"The right of legal redemption, as a limitation of the ownership, always operates with the maximum efficacy with respect to the third parties acquiring the property, to such a degree that in regards thereto, certain mortgages principles basic in our system do not apply, such as the certified public registration, which is paralized and definitively, the energetic remedies of defense which the registration ordinarily entails,

However, the Civil Code in its § 1414 modifies the mortgage criterion, when it provides that the legal redemption may be exercised within the nine days "counted from the entry in the registry." Thus the first purchaser as well as the subacquirers who have recorded their titles within those nine days after the recording of the first sale will be affected by action of redemption filed within those nine days. They will not be if once the first acquisition is recorded the subsequent purchasers have acquired and recorded their titles after those nine days, even when the action of redemption has been filed within said period against the first purchaser. Of course, if the redeemer was cautious and he timely obtained the entry of the notice of lis pendens in the registry pursuant to § 91 of the Code of Civil Procedure, or the cautionary notice of his claim, pursuant to § 42 of the Mortgage

---

remain inert, all of which constitutes the exception unanimously recognized and stated in subd. 3 of § 37 of the Mortgage Law."

Badenes Gasset in his work *"La Preferencia Adquisitiva en el Derecho Español* 80–82 Editorial Bosch, Barcelona (1958), says:

*"Effects in regards to third persons.*—Pursuant to the Mortgage Law of 1869, the rescissory and resolutory ([61]) actions could not prejudice a third person which had recorded his right (articles 36 and 38) unless said actions would stem from causes which were explicitly stated in the Registry (art. 37).

"After the Civil Code was published, the majority of authors (Sánchez Román, Oliver) believed that § 38 of the Mortgage Law was modified by § 1.639 of the Code which upon dealing with the emphyteutic census provides that if the alienation has taken place without the previous notice required by § 1.637, the legal owner, and in the proper case, the beneficial owner, may exercise the action of redemption at any time until one year has elapsed, to be counted from the registration of the sale in the Registry of Property.

"Against this criterion Manresa stated that the Civil Code and the Mortgage Law each governs within its own field of action. Articles 36 to 38 of the Mortgage Law deal with the effects of the registration as to third persons. Section 608 of the Code clearly states that the Mortgage Law shall govern everything relating to the effects of the registration; hence, article 1.639 could not modify, little nor much, the provisions of said Law as to the effects of the registration of alienations, in favor of a third party when the possibility of its resolution is not explicitly stated in the Registry.

"The Mortgage Law of 1909, made this matter clear, excepting subd. 2 (now 3) of § 37 of the general provision contained in § 36 (now 37, para-,

Law, or the effectiveness of judgment by means of the prohibition to alienate, said subacquirers shall not be able to oppose the redemption on the ground that they were third-party mortgagees.[21]

Now then, Ramón Agudo Cano, his wife Raquel Baker and the conjugal partnership composed by them, besides being strangers to the community Zalduondo Cruz and Zalduondo Díaz, as were their predecessors in title, the spouses Iturregui-Margarida, do not have in regard to the redeemer the standing of a third-party mortgagee nor are they entitled to any registration.

Agudo Cano did not acquire his title over the joint interest redeemed from any person who had recorded it in the Registry. The transfer in his favor was made on December 22, 1955. At that time not even the sale of Milagros Zalduondo Cruz in favor of Iturregui had been presented for registration

---

graph 1), the actions of legal redemption, in the cases and terms established by law, without requiring that said resolutory condition be explicitly stated in the Registry. Today, therefore, and within the term fixed for the legal redemption, any alienation made may be resolved—as Morell states in general terms—whether or not recorded, said alienations and any real rights which might have been constituted during said period, becoming void.

"The indicated reform is, as Scaevola says, 'an innovation contrary to the good principles of the Mortgage Law'; but Valverde, on the other hand, deems it to be beneficial. It has worked—he states—to give full effectiveness to the right of redemption granted by the Civil Code.([62])

"At present, therefore, the redeemer's right cannot be thwarted, which was made possible by the old law, for the first purchaser could immediately sell the thing bought to another person or even simulate a sale, and once it was recorded, the redemption could not be exercised.

"Footnote 61.—The action of legal redemption is considered by the mortgage legislation as rescissory, revocatory or resolutory, but we have pointed out that we deem to be more correct the doctrine which states that the contract on which the redemption is exercised, remains unaltered.

"Footnote 62.—The action of legal redemption is granted against a third person even when the cause for resolution is not stated in the Registry (Judgment of June 24, 1954); in matters of legal redemption the third party concept plays no part (Judgments of October 29, 1946 and October 4, 1950)."

[21] There is no indication in the record that the redeemer had taken any of said legal precautions.

and the title owner of the joint ownership, according to the Registry, was Milagros Zalduondo Cruz. Furthermore, Agudo Cano and his wife were made defendant parties in the action before their title was recorded.

We have repeatedly held that a person who has acquired title directly from one who at the time of its execution does not appear in the Registry to have a right to execute it is not a third-party mortgagee.[22]

Agudo Cano may be considered a third party under the Civil Code who could not acquire any more rights than those held by Iturregui, his predecessor in title.

When Iturregui acquired his title over the joint ownership, he knew from the entries in the Registry that the other joint interests in the property belonged to the other brothers and sisters of his transferor, among them, Juanita Zalduondo Díaz and that each one or all of them had a preferred right to acquire it. Iturregui did not seek registration protection for his title, although the Registry cautioned him when he bought it, as to the community condition of the property. He had to realize the menace or possibility of a resolutory action which the law recognized to the other co-owners and weigh properly the insecure nature of the right which he was acquiring. The right of property transferred to him on June 3, 1955 in the joint-ownership, while the right of redemp-

---

[22] See *Monserrate* v. *Lopés*, 80 P.R.R. 476, 487 (1958); *Pérez* v. *Cancel*, 76 P.R.R. 625, 633 (1954); *Olmedo* v. *Balbín*, 69 P.R.R. 547, 550 (1949); *Lizardi* v. *Caballero*, 65 P.R.R. 77, 83 (1945).

In this last case, at 83 it is stated:

"In his Annotation to the Mortgage Law of Puerto Rico, Muñoz Morales comments the meaning of third persons (*terceros*) to which the above Section refers and on p. 256 states that: 'Third person is one who acquires from the person who, according to the registry, has a right to sell; one who did not take part in the act or contract which was declared void; one who having acquired thus, recorded his title; he is the person described in section 27; and third persons are also the subsequent acquirers, but all of them must ground their right on a recorded title in order to enjoy the benefit or exception of section 34 subject to the condition that the cause of nullity does not clearly appear from the record annulled."

tion remained unextinguished, lacked juridical firmness, it was revocable and his freedom to dispose of the property was tied or subject to the contingency of the action of redemption, not by a single co-owner but by the six of them. In said situation in any sale made by Iturregui the purchaser also acquired under the caution of a resolutory condition.

The possibility of exercising the redemption became a reality on the following June 10 when the plaintiff complying with all the necessary legal requisites, filed her action against Iturregui. Said right having been exercised timely and properly, and stemming from the execution of the first sale, the possibility of Iturregui's right acquiring firmness had greatly diminished. Said exercise rendered the first sale in favor of Iturregui void, since in a last analysis, in the redemption the purchaser seems to have acted as a representative of the redeemer. The obstacle for the legal consolidation of his title had been raised by the will of a co-owner. If Iturregui merely had an unstable or revocable title he could not transfer an irrevocable, firm or better juridical title to Agudo Cano. The temporary revocability of Iturregui's title backfired in the act of the second alienation.

The former purchased without his vendor having recorded his title. The registration condition for him at the time of the purchase was the same that existed when Iturregui acquired, that is, it still clearly appeared from the Registry that the property belonged in common to the heirs of Luis Zalduondo Veve. Iturregui's condition of stranger to the community had not disappeared. Agudo Cano seemingly did not inquire whether those heirs or any one of them had filed an action of redemption against Iturregui. He purchased while the action of redemption was pending (he so admitted in his answer) and subject to the result of the suit.

The nature of the action of redemption is real. It follows the thing whereever it goes. As stated in 95 Civ. Jur. 929, basically it is nothing more than a revendicatory

action.[28] When Iturregui sold to Agudo Cano, the former lost all immediate or mediate relation over the alienated joint interest. The alienation made by Iturregui to Agudo Cano, as far as they were concerned, is an absolute, unconditional and irresoluble right; by virtue of the contract of December 23, 1955, the condominium can not return to Iturregui's possession who, upon selling, exhausted the powers that corresponded to him as title owner of the joint interest in litigation. Agudo Cano being the last and present possessor of the redeemed thing, in order to give validity to the right born and exercised in conformity to the law, he is subject, since he acquired, to the consequences of the action which was then pending.

The exercise and validity of the action of redemption is not subject, nor can it yield, to the alleged good faith of a purchaser pendente lite. The purchaser of a part of a thing possessed in common and undividedly by several persons should not presume that the other co-owners have never exercised properly their priority to acquire it. The mere fact of acquiring from the owner who had not bothered to record his joint ownership was sufficient to warn him of a possible

[23] Section 290 of the Code of Civil Procedure provided:

"Section 290.—An action for the recovery of real property against a person in possession cannot be prejudiced by any alienation made by such person, either before or after the commencement of the action."

The main declaration relating to the delivery of the joint interest and execution of the deed should be done against whoever is in possession of the property or alienated right.—Judgment of the Supreme Court of Spain of February 27, 1954; II J. Santamaría "Comentarios al Código Civil" 552.

In its VI Digesto 284, Ricardo Oyuelos says:

"(a) Action of redemption.—It has fundamentally and essentially the character of real since the purpose is to acquire the ownership of a property sold by the original owner to a third person, which acquisition may not be attained but from whoever has it in his possession, as title owner, and because the mere right declared in favor of the redeemer, would be void if the defendant could not deliver the thing because it is no longer under his control nor fulfill any of the obligations of subrogation which are the consequence of the success of the action of redemption.([1])

"([1]) Judgments of October 11, 1905 and May 11, 1912."

action of redemption against him. He should have taken into account that he was acquiring an insecure, revocable or resolute right during some time and that he could not simply depend on the good faith that might have been privately suggested to him by his transferor who had not bothered to record or delayed in recording his title timely and thereby avoid a publicity that might prejudice him [24] for which reason he should suffer the consequences of his own acts. Juanita Zalduondo Díaz, whose condition of co-owner clearly appeared from the Registry, did nothing more than timely and in due form, and with good success, exercise the right for redemption recognized by our Civil Code and which under the circumstances of the case was as binding on Iturregui and his wife as on Agudo Cano and his wife. The only guarantee he had as a successive acquirer was to be joined as party defendant and be heard in court and he fully enjoyed this protection, in conformance with our civil practice, before the trial court and before us.

■■■ Considering all the foregoing we must conclude that at the time summary judgment was rendered, there was no real or genuine controversy as to any material fact of the action of legal redemption of co-owners before the trial court, and that the redeemer had a clear right to obtain judgment as a question of law, it being proper for the court to render summary judgment without the need of an ordinary suit in the merits.[25]

---

[24] Section 1618 of the former Law of Civil Procedure provided:

"Art. 1618. If the sale has been maliciously concealed, the period of nine days shall not begin until the day following that upon which it is shown that the plaintiff had knowledge thereof.

"For said purpose, the concealment of the sale shall be considered malicious if it should not have been recorded in the registry of property at the proper time. In such case, the period shall begin from the date of the presentation of the instrument of sale in the registry."

[25] We repeat that the only fact that the appellant attempted to deny in his answer was that when Iturregui bought from Milagros Zalduondo Cruz, he was a stranger to the community. However, *he did not deny said condition on June 3, 1955*, date of the first sale. He merely alleged

The judgment appealed from should be modified in the sense that it should state that in the public deed executed by the defendants Ramón Agudo Cano and his wife Raquel Baker, or in the proper case, by the marshal of the trial court, conveying the title of the redeemed joint interest to the plaintiff Juanita Zalduondo Díaz, the promise not to sell said joint interest for four years be inserted and that notice of said promise be entered in the Registry of Property so as to give notice to third parties, counting said four years from the entry in the registry of the title granted in favor of the plaintiff and, as modified, it will be affirmed.

The case will be remanded to the trial court so that after hearing the parties it may determine and fix: (1) the expenses incurred in the first contract of sale executed on June 3, 1955 and any other lawful payment made for said first sale, and (2) the necessary and useful expenses made in the thing sold or redeemed, the plaintiff being obliged to pay to the defendant before the execution of the deed or deposit in court at said party's disposal, the sum of all expenses and payments determined and fixed by the trial court.

Mr. Justice Blanco Lugo did not participate herein.

---

"that at the time the defendant Nicolás Iturregui sold to the intervener herein—December 22, 1955—said defendant—Iturregui—was not a stranger to the community." We have seen that the condition of stranger of Iturregui never disappeared. The timely exercise of the action foreclosed the possibility of becoming a co-owner before the second sale. The only legal ground for opposition specifically alleged against the motion for summary judgment—the prescription of the "cause of action . . . against the intervener"—is untenable because no new cause of action was ever exercised against Agudo Cano by reason of the alienation pendente lite of the thing reedemed. As successor in title and in possession of the thing in issue, he was simply made defendant in substitution of the original defendant, in an action which stemmed from the first sale and which was timely and properly exercised.